UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                                     :
UNITED STATES OF AMERICA,                                            :
                                                                     :
                                                                     :
          -v-                                                        :          23-cr-569 (LJL)
                                                                     :
TYRIEK SKYFIELD                                                      :          OPINION AND ORDER
                                                                     :
                    Defendant.                                       :
                                                                     :
---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/22/2023_

LEWIS J. LIMAN, United States District Judge:

     Defendant Tyriek Skyfield ("Skyfield") moves, pursuant to Federal Rule of Criminal

Procedure 12(b)(3)(B)(v), to dismiss the Indictment for failure to state an offense and, pursuant

to Federal Rules of Criminal Procedure 12(b)(3)(C) and 41(h), to suppress certain evidence.

Dkt. No. 28.  For the following reasons, the motion is denied.

## BACKGROUND

     For purposes of this motion, the Court assumes the truth of the undisputed facts in the

parties' briefs and accompanying documents.  *See United States v. Juarez*, 2013 WL 357570,

at *1 n.1 (E.D.N.Y. Jan. 29, 2013).

     This case arose out of a shooting that occurred shortly before 10:00 P.M. on July 22,

2023 in the Bronx, New York.  Dkt. No. 30 at 4–5; Dkt. No. 36 at 2.  As the victim (the

"Victim") subsequently told the police, he came to New York City with $10,000 in cash to

purchase a car.  Dkt. No. 30 at 3–4.  He then collected another $6,000 in cash from a friend who

owed him a debt.  *Id.* at 4.  On the night of July 22, the Victim and his friend (the "Witness")

drove to the Bronx to pick up a suitcase from a man named "Ty," which the Victim believed was

short for "Tyrone."  Dkt. No. 36 at 3.  When the Victim and Witness arrived at the agreed-upon

location—the intersection of Laconia Avenue and East 224th—Ty was not there.  Dkt. No. 30 at 4; Dkt. No. 36 at 4.  The Victim called Ty, but he did not answer.  Dkt. No. 30 at 4.  Approximately fifteen minutes later, Ty texted the Victim that he was five minutes away and that they should instead meet at the intersection of Needham Avenue and East 224th Street, a few blocks from the original meeting point.  *Id.*  The Victim and Witness drove to that new location and found the suitcase sitting on the street.  *Id.*  They retrieved the suitcase, placed it in the back seat, and sat in the car smoking.  *Id.*  Five minutes later, two men brandishing pistols approached the car and demanded money.  *Id.*  The robbers proceeded to take the Victim's debit card, credit card, and iPhone.  *Id.*; Dkt. No. 36 at 4.  As the robbers walked away, the Victim followed, asking one of them to give back his iPhone.  Dkt. No. 30 at 4.  That robber fired his pistol.  *Id.*  The bullet ricocheted off the ground and struck the Victim in his foot.  *Id.*  When the Victim persisted in following the robber, the robber fired a second shot that did not hit the Victim.  *Id.*; Dkt. No. 36 at 4.

The New York Police Department ("NYPD") ShotSpotter system recorded the shots and alerted officers in the 47th Precinct.  Dkt. No. 30 at 5.  Upon arriving at the scene, police officers found the Victim, whom they transported to a nearby hospital to treat his gunshot wound.  Dkt. No. 36 at 3.  The officers also discovered a bullet fragment on the sidewalk where the Victim was shot and another approximately a block away where the fragment had apparently fallen out of the Victim's sock.  *Id.* at 4.

The following day, the NYPD canvassed the area again and recovered a shell casing in the yard of a residence at the intersection of Needham Avenue and East 223rd Street, approximately where the second gunshot was fired.  *Id.* at 4.  The NYPD also collected and reviewed video footage from cameras in the area.  *Id.* at 5.  Although the cameras did not capture

the robbery itself, the NYPD obtained footage of the robber firing the first gunshot at the Victim and, thirteen seconds later, the Victim reacting to the second gunshot.  *Id.*  The footage also showed the white SUV that the robbers emerged from and later used to flee the scene.  Dkt. No. 30 at 5; Dkt. No. 36 at 2.  Based on the apparent make and model of the SUV and its distinctive all-black tires and rims, the NYPD examined License Plate Reader ("LPR") reports and found that a white BMW that seemed to match the car in the footage had been captured by an LPR at the intersection of Boston Road and East 213th Street, 0.6 miles away from the shooting, at 7:13 P.M.  Dkt. No. 30 at 5; Dkt. No. 36 at 5.  Another search revealed that an LPR had detected the white BMW at 3:12 A.M. on the following morning, July 23, 2023, near the intersection of Woodhaven Boulevard and Atlantic Avenue in Queens, New York.  Dkt. No. 36 at 5.  The NYPD collected footage from cameras near that intersection, which showed a man with "the same build, hairstyle and clothing" as the shooter exiting the white BMW shortly before 3:00 A.M. on July 23, 2023 and entering the Atlantis Gentlemen's Club (the "Club").  Dkt*.* No. 30 at 5–6.  Video footage from the Club showed a man, wearing a shirt similar to that worn by the robber, present proof of identification to enter.  Dkt. No. 36 at 5.  The Club's records revealed that the identification document presented by the man stated that his name was "Tyriek Maliek Skyfield."  *Id.*

On August 3, 2023, an NYPD officer investigating a separate incident in which Skyfield was shot reviewed an image of the man entering the Club.  *Id.* at 6.  The officer confirmed that the man in the image was Skyfield.  *Id.*  As a result, the NYPD activated a "probable cause" Suspect Information Card for Skyfield in connection with the July 22 shooting.  *Id.*  Skyfield was on both federal supervised release and New York parole at the time.  *Id.* at 2.  After several years' imprisonment for Hobbs Act robbery, Skyfield had been resentenced by the Honorable

Ronnie Abrams of this Court to time served followed by three years of supervised release.  Dkt. No. 30 at 3.  Skyfield had begun his term of supervised release on December 9, 2022.  *Id.*

On August 4, 2023, the NYPD contacted U.S. Probation Officer William Pompei, explained their investigative findings, and provided him three photos of the shooter and a fourth photo of the man entering the Club.  Dkt. No. 30 at 6; Dkt. No. 36 at 6; *see also* Dkt. No. 30-10.  That same day, Pompei submitted a petition to Judge Abrams requesting a warrant for Skyfield's arrest.  Dkt. No. 30-1.  The petition alleged that Skyfield had violated the conditions of his supervised release on July 22, 2023 by possessing a pistol and committing second-degree assault by shooting an individual in the heel.  *Id.* at ECF p. 3.  Pompei declared under penalty of perjury:

> According to a New York City Police Department incident report, on July 22, 2023, Skyfield has been identified as an individual involved in a shooting and robbery of the victim who is identified in the report.  After an altercation with two individuals attempting to rob him, the male victim suffered a gunshot wound to his right heel in the Bronx, New York.  Skyfield has been identified as the shooter in this incident. . . . Based on the violent nature of this incident, the Probation Office is respectfully recommending the issuance of a warrant for Skyfield's arrest.

*Id.* at ECF p. 4.[1]  Judge Abrams issued an arrest warrant that day.  *Id.* at ECF p. 5.  The warrant commanded "[a]ny authorized law enforcement officer" to "arrest and bring before a United States Magistrate Judge without unnecessary delay Tyriek Skyfield who is accused of . . . Non-Compliance with supervised release conditions as outlined in the petition."  *Id.* at ECF p. 6.

On August 9, 2023, the Government and U.S. Marshals Service (the "Marshals") applied to the Honorable Gabriel W. Gorenstein for a warrant for prospective and historical cell site location information ("CSLI") and pen register information for the purpose of locating Skyfield as a "person to be arrested."  Dkt. No. 36 at 7; *see* Dkt. No. 30-2.  In support of that application,

---

[1] Pompei also stated that Skyfield was a suspect in a separate investigation by the NYPD for a robbery that occurred on July 15, 2023.  Dkt. No. 30-1 at ECF p. 4.  Finally, Pompei declared that Skyfield had been the victim of a "random gunshot wound" to his leg but "was uncooperative with the police."  *Id.*

the Government submitted an affidavit from Deputy U.S. Marshal Charles Kemmlein who stated that Skyfield was on a term of supervised release pursuant to a case before Judge Abrams, that Judge Abrams had issued a warrant for Skyfield's arrest for violating the terms of his supervised release, and that the warrant "remain[ed] active." Dkt. No. 30-2 at ECF p. 11. Kemmlein further asserted that there was probable cause to conclude that Skyfield used the target cellphone because he had given the phone number to his probation officer as his contact information and had recently used that number to call his probation officer. *Id.* Magistrate Judge Gorenstein issued the requested warrant. *Id.* at ECF pp. 14–17.

The Marshals and NYPD executed the warrant for Skyfield's arrest on August 15, 2023. Dkt. No. 30 at 11. The arrest commenced at approximately 5:50 A.M. at a location in New Rochelle, New York that the Marshals had identified with the CSLI.[2] Dkt. No. 36 at 7. The location proved to be the Skyfield family residence. *Id.* at 7–8. Officers knocked on the door and spoke with Skyfield's mother, who denied he was home. *Id.* at 8. After they entered the apartment and called out for Skyfield, the officers located him in a bedroom and handcuffed him. *Id.* Skyfield indicated that an iPhone in the bedroom was his and asked to use it to call his probation officer. *Id.* The officers seized the iPhone. *Id.*

After Skyfield's arrest, the Marshals temporarily ceded custody over him to the NYPD. Dkt. No. 30 at 12. He was taken to the 47th Precinct for processing, where he verbally waived his *Miranda* rights, was interviewed by the NYPD, and was held overnight. Dkt. No. 36 at 8.

---

[2] Skyfield states that the execution of the warrant occurred at 5:55 A.M., Dkt. No. 30, but the interview notes with an arresting officer that Skyfield submits with his motion indicate that the execution occurred at 5:50 A.M., Dkt. No. 30-8 at ECF p. 3. For purposes of this motion, the Court assumes that the earlier time is correct, but the difference is immaterial.

During that interview, he admitted that he was the person depicted in the image of the man entering the Club, but he denied any involvement in the shooting. *Id.*

Skyfield appeared in federal court on the violation of supervised release ("VOSR") charge the next day. *Id.* On August 22, 2023, the Government filed a Complaint that charged Skyfield with possessing ammunition after a felony conviction in violation of 18 U.S.C. § 922(g) based on his alleged role in the July 22 shooting. *Id.* at 9; Dkt. No. 1.

The Government applied for a warrant to search the seized iPhone on August 29, 2023. Dkt. No. 30-5. Steven Connolly, an Investigator with the New York State Police serving on a federal task force, submitted an affidavit in support of the application. *Id.* at ECF p. 3. Connolly explained that he had worked for the State Police for fifteen years and, during that time, had participated in numerous investigations into violent and drug crimes involving the search and seizure of cellphones, computers, and other electronic devices. *Id.* He attached a copy of the Complaint against Skyfield, explained that the iPhone was seized during Skyfield's arrest, and stated that NYPD officer told him that Skyfield used the iPhone to make calls while at the 47th Precinct after unlocking the iPhone with a passcode. *Id.* at ECF p. 4. Connolly also asserted that he subsequently obtained the iPhone and, upon turning it on, observed that the home screen showed an image of a man with long braided hair, consistent with Skyfield's hair, who was "wearing a white graphic T-shirt that, based on visible lettering, appears to be the same white graphic T-shirt previously worn by the Subject during the Shooting and at the Club." *Id.* Connolly added:

> Based on my training and experience, I know that it is common for those involved in firearms offenses to use cellphones and other electronic devices to communicate with others about the offense before, during, and after commission of the crimes and that they often store records relating to their illegal activity on electronic devices such as the Subject Device. For example, I know that, based on my training and experience, felons who possess firearms routinely take photos and videos of

6

firearms, or share such photographs or videos with others through instant messages. Moreover, based on my training and experience, I know that former felons, who cannot lawfully purchase firearms, will often search the dark web for sellers of firearms or will turn to other unauthorized sellers of firearms, who can be found on and messages with on social media, such as Facebook, or otherwise by communicated with by text message.

*Id.* at ECF pp. 4–5.

The Honorable Robert W. Lehrburger granted the application and issued a warrant that described the iPhone and authorized the Government to review the electronically stored information ("ESI") related to the alleged § 922(g) violation. *Id.* at ECF p. 23. The warrant stated that the Government could use "various techniques" to locate relevant evidence, but also required the Government to "make reasonable efforts to search only for files" responsive to the warrant. *Id.* at ECF p. 24. However, the warrant permitted the Government "to conduct a complete review of all the ESI if necessary to evaluate its contents and to locate all data responsive to the warrant." *Id.* at ECF p. 25.

The Government conducted searches on Skyfield's iPhone pursuant to the warrant and obtained a variety of ESI, including user attribution data, a boarding pass with the Victim's name on it, and images of marijuana and large sums of cash. Dkt. No. 36 at 44; Dkt. No. 36-1 at ECF pp. 11–13.

The Probation Office filed an amended violation report on August 30, 2023, alleging that Skyfield had violated his conditions of supervised release by possessing ammunition after a felony conviction. Dkt. No. 36 at 9. Skyfield was arraigned before Judge Abrams that day. *Id.*

On November 1, 2023, a grand jury returned an Indictment against Skyfield for violating § 922(g). Dkt. No. 14. Specifically, the Indictment averred that Skyfield, "knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed ammunition, to wit, a 9mm Luger shell casing, and the

ammunition was in and affecting commerce." Dkt. No. 14 ¶ 1. Skyfield was arraigned on the Indictment before the undersigned on November 9, 2023. *See* Minute Entry of Nov. 9, 2023.

The Government filed an application for an expanded warrant to search the seized iPhone on November 30, 2023. Dkt. No. 36 at 9; Dkt. No. 36-1. Connolly once again submitted an accompanying affidavit, in which he stated that there was probable cause to search the device for evidence of conspiracy, possession of a firearm and ammunition after a felony conviction, discharging a firearm in relation to a crime of violence or drug trafficking, Hobbs Act robbery, and possession with intent to distribute a controlled substance. Dkt. No. 36-1 at ECF pp. 8, 10. Connolly described the evidence he had obtained through prior searches on the iPhone. *Id.* at ECF pp. 11–13. He also explained that, based on his review of the phone's pen register data, he believed that Skyfield had communicated with the Victim's phone on dozens of occasions both leading up to and on the day of the shooting. *Id.* at ECF pp. 14–15. From his training and experience, Connolly concluded that Skyfield was engaged in drug trafficking and that the Victim met with Skyfield on July 22, 2023 to consummate a drug transaction, but Skyfield instead robbed the Victim. *Id.* at ECF p. 15. Accordingly, Connolly stated that there was probable cause to expand the Government's search of the iPhone to encompass evidence relevant to conspiracy, discharging a firearm in relation to a crime of violence or drug trafficking, Hobbs Act robbery, and possession with intent to distribute a controlled substance. *Id.* at ECF pp. 16–17. The Honorable Sarah L. Cave issued the expanded search warrant. *Id.* at ECF p. 2.

Skyfield filed the instant motion to dismiss the Indictment or, alternatively, suppress evidence on December 11, 2023. Dkt. No. 28. He also filed an accompanying memorandum of law, Dkt. No. 30, and affidavit of his attorney, Richard Palma, Dkt. No. 29. Two days later, Skyfield submitted his own affidavit, in which he confirmed that during his arrest he had asked

to use his phone to call his probation officer.  Dkt. No. 31 ¶ 3.  The Government filed its opposition to Skyfield's motion on December 16, 2023.  Dkt. No. 30.  Skyfield submitted a reply on December 17, 2023.  Dkt. No. 31.  The Court held oral argument on Skyfield's motion on December 19, 2023.

## LEGAL STANDARD

### I.    Motion to Dismiss the Indictment

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Cr. P. 7(c)(1).   "A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged."  *United States v. Pham*, 2022 WL 993119, at *3 (S.D.N.Y. Apr. 1, 2022) (Nathan, J.) (quoting *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013)).  The Court "accept[s] as true all of the allegations of the indictment."  *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).  "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also id.* ("[A]n indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000))).  As a result, "[i]t is not the function of an indictment to inform the defendant of the evidence or the facts which the Government will use to prove its case."  *United States v. Phillips*, 2023 WL 5671227, at *3 (S.D.N.Y. Sept. 1, 2023); *see also United States v. Bankman-Fried*, 2023 WL 4194773, at *7 (S.D.N.Y. June 27, 2023) ("[T]he

Court will not look beyond the face of the indictment and draw inferences as to proof to be adduced at trial, for the sufficiency of the evidence is [generally] not appropriately addressed on a pretrial motion to dismiss." (cleaned up)).  Ultimately, "[a]n indictment 'need not be perfect, and common sense and reason are more important than technicalities.'"  *Stringer*, 730 F.3d at 124 (quoting *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001)).

## II.     Motion to Suppress Evidence

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  As "the proponent of the motion to suppress," a defendant seeking to suppress evidence based on an alleged Fourth Amendment violation bears the "burden to establish that the search [or seizure] violated his Fourth Amendment rights."  *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023).

"Probable cause exists when the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Bodnar*, 37 F.4th 833, 841 (2d Cir. 2022).  "Probable cause is not a high bar."  *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022).  "Courts should pay great deference to a magistrate judge's determination of probable cause."  *Id.*; *see also United States v. Jakobetz*, 955 F.2d 786, 803 (2d Cir. 1992) ("[A]ny doubts should be resolved in favor of upholding the warrant[]." (quoting *United States v. Vasquez*, 634 F.2d 41, 45 (2d Cir.1980)).

"To satisfy the Fourth Amendment's particularity requirement, a warrant must meet three criteria: (1) it must identify the specific offense for which the police have established probable cause; (2) it must describe the place to be searched; and (3) it must specify the items to be seized by their relation to designated crimes."  *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020).  "A warrant that comports with the particularity requirements may, however, be defective

due to overbreadth . . . if it is broader than can be justified by the probable cause upon which the warrant is based." *Id.* at 179.

But even if a warrant is invalid, "the good-faith exception to the exclusionary rule applies when the agents executing a search [or arrest] warrant act with an objectively reasonable good-faith belief that their conduct is lawful." *Jones*, 43 F.4th at 111.  The good-faith exception reflects the "animating principle of the exclusionary rule," namely the "deterrence of police misconduct." *United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011).  "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant," but there is a "presumption of reasonableness." *Id.* at 100; *see also United States v. Whitehead*, 2023 WL 3934667, at *4 (S.D.N.Y. June 9, 2023); *see also United States v. Shafer*, 2022 WL 868901, at *1 (2d Cir. Mar. 24, 2022) (summary order) ("We decide whether the good-faith exception applies keeping in mind that 'most searches conducted pursuant to a warrant are likely to fall within its protection.' (cleaned up) (quoting *Clark*, 638 F.3d at 100)).  However, there are four situations in which the good-faith exception cannot apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Purcell*, 967 F.3d at 179–80.

## DISCUSSION

## I.     Motion to Dismiss the Indictment

Skyfield contends that the Court must dismiss the Indictment, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), for failure to state an offense under 18 U.S.C. § 922(g)(1). Dkt. No. 30 at 14.  But his arguments fall short of the "high bar" necessary to dismiss an indictment. *United States v. Chambers*, 2018 WL 1726239, at *1 (S.D.N.Y. Apr. 9, 2018).

As relevant, 18 U.S.C. § 922(g)(1) provides:  "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any . . . ammunition."  18 U.S.C. § 922(g)(1).  The statute defines "ammunition" as "ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm."  18 U.S.C. § 921(a)(17)(A).  Thus, for purposes of § 922(g)(1), ammunition "may mean either ammunition or cartridge cases."[3]  *United States v. Danielson*, 1997 WL 473970, at *1 (S.D.N.Y. Aug. 20, 1997), *aff'd*, 199 F.3d 666.

Here, the Indictment alleged:  "On or about July 22, 2023, in the Southern District of New York and elsewhere, TYRIEK SKYFIELD, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed ammunition, to wit, a 9mm Luger shell casing, and the ammunition was in and affecting commerce."  Dkt. No. 17 ¶ 1.

Skyfield argues the Indictment is fatally flawed in two respects.  First, the Indictment avers that he possessed a single shell casing, whereas the statute refers to "cartridge cases" in the plural.  Dkt. No. 30 at 15–16.  That discrepancy requires dismissal, according to Skyfield, because a felon must possess *multiple* shell casings to violate § 922(g)(1).  But Skyfield's interpretation defies the longstanding and "basic principle that 'unless the context indicates otherwise . . . words importing the plural include the singular.'"  *SEC v. Fowler*, 6 F.4th 255, 266 (2d Cir. 2021) (quoting 1 U.S.C. § 1); *see also United States v. Perry*, 133 F. 841, 841

---

[3] As the Second Circuit has observed, "each live round of ammunition is made up of four components: a projectile bullet, an exterior brass shell casing (the 'shell'), propellent powder within the shell, and a primer that ignites the powder."  *United States v. Danielson*, 199 F.3d 666, 668 (2d Cir. 1999).

(C.C.S.D.N.Y. 1904) (recognizing "the elementary principle of statutory construction that singular expressions in a statute may include the plural, and vice versa").  As Skyfield does not identify any statutory context that would justify deviating from that principle, this Court joins the numerous federal courts that have held that a single bullet—even a single cartridge casing—constitutes "ammunition" under § 921(a)(17)(A).  *See United States v. Cardoza*, 129 F.3d 6, 10 (1st Cir. 1997) ("[T]he word 'ammunition' encompasses a single bullet or cartridge."); *accord United States v. Shear*, 2022 WL 2905507, at *3 (N.D. Ohio July 22, 2022); *Evans v. United States*, 2016 WL 1159086, at *8 (D. Md. Mar. 22, 2016); *United States v. Davis*, 2007 WL 37805, at *1 (W.D.N.C. Jan. 4, 2007).

Second, Skyfield contends the Government's theory is that he possessed a spent shell casing, yet a spent shell casing differs so fundamentally from a casing that has not been discharged that a spent casing no longer qualifies as ammunition.  Dkt. No. 30 at 14–15.  However, his argument rests on a mistaken premise: the Indictment alleges that Skyfield possessed "a 9mm Luger shell casing," Dkt. No. 17 ¶ 1, not a spent 9mm Luger shell casing.  Thus, the Indictment does not limit the Government to the theory that Skyfield possessed a spent shell casing.  And the Government explains that it "anticipates that the evidence will show that the defendant possessed *live* ammunition, including an *un*spent 9mm Luger shell casing, at the time he committed the Shooting."  Dkt. No. 36 at 13.  Because § 922(g)(1) clearly proscribes possession of an unspent shell casing, the Indictment states an offense under that section.  *See United States v. Thomas*, 765 F. App'x 553, 556 (2d Cir. 2019) (affirming a conviction when "the government's theory of the case was not that Thomas possessed a spent shell casing in the aftermath of the shooting, but rather that he possessed live ammunition when he shot the victim"); *United States v. Shipp*, 2021 WL 1890041, at *6 (E.D.N.Y. May 11, 2021) ("The fact

that the Jagemann cartridge was a spent shell casing when officers recovered it after the shooting is of no moment.  Sufficient evidence supported the jury's conclusion that Shipp possessed the firearm and ammunition charged in the indictment."); *see also United States v. Obi*, 25 F.4th 574, 578 (8th Cir. 2022) (affirming a conviction based on evidence that "the shell casings were discharged from the shooter's firearm and therefore had been ammunition knowingly in the shooter's possession").  At trial, Skyfield can contest that he possessed an unspent 9mm Luger shell casing, but "[a] motion to dismiss an indictment is not the occasion to present factual defenses."  *United States v. Rosado*, 2002 WL 1203846, at *1 (S.D.N.Y. June 3, 2002); *Phillips*, 2023 WL 5671227, at *4.

Thus, the Court denies Skyfield's motion to dismiss the Indictment.

## II.     Motion to Suppress

Skyfield also argues that several aspects of the Government's investigation and arrest violated his constitutional rights, such that the Court must suppress the resulting evidence.  Dkt. No. 30 at 2.  The Government responds that each of the challenged actions were proper and, in any event, suppression would be inappropriate because the officers who executed the searches and arrest acted in good faith.  Dkt. No. 36 at 1.

### A.     The "Stalking Horse" Theory

Throughout his suppression motion, Skyfield contends that the Probation Office served as a "stalking horse" for the NYPD by taking actions against him on the NYPD's behalf in order to bolster the Police Department's case.  Dkt. No. 30 at 17; *see also id.* at 1 ("In the absence of sufficient facts to satisfy a State judge that Mr. Skyfield was the man who discharged a firearm on July 22, 2023 in the Bronx, the N.Y.P.D. enlisted U.S. Probation Officer Bill Pompei to serve as its federal stalking horse.").

In *United States v. Watts*, the Ninth Circuit endorsed the stalking horse theory:  "A probation officer acts as a stalking horse if he conducts a probation search on prior request of and in concert with law enforcement officers. . . .  The appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives."  67 F.3d 790, 794 (9th Cir. 1995), *rev'd on other grounds*, 519 U.S. 148 (1997).

But binding precedent prevents the Court from adopting the Ninth Circuit's view.  The Second Circuit expressly considered and rejected the stalking horse theory in *United States v. Reyes*, 283 F.3d 446 (2d Cir. 2002).  The *Reyes* court proceeded from the practical insight that "the objectives and duties of probation officers and law enforcement personnel are unavoidably parallel and are frequently intertwined."  *Id.* at 465.  In light of their overlapping responsibilities, collaboration between probation officers and law enforcement officials is sensible, not sinister. *Id.* at 471 ("[T]he law permits cooperation between probation officers and other law enforcement officials so that they may work together and share information to achieve their objectives.").  Thus, the court held that "[t]he so-called 'stalking horse' theory does not exist as a matter of law."  *Id.*; *see also United States v. Newton*, 369 F.3d 659, 667 (2d Cir. 2004) (same).

Skyfield's stalking horse theory "that the NYPD was the real law enforcement animator" behind the Probation Office's actions is therefore inconsistent with binding Second Circuit precedent.  *United States v. Chandler*, 56 F.4th 27, 43 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1791 (2023).  Because the "stalking horse theory is not a valid basis for the suppression of evidence in this Circuit," *United States v. Chandler*, 164 F. Supp. 3d 368, 381 (E.D.N.Y. 2016), the Court denies the motion to suppress evidence based on that theory.

B.        **The VOSR Arrest Warrant**

Next, Skyfield challenges both the issuance and execution of the warrant for his arrest for VOSR.  He avers that Pompei's warrant application falsely stated that the NYPD had identified Skyfield as the shooter, Dkt. No. 37 at 5, and did not provide probable cause for his arrest, Dkt. No. 30 at 20–21.  Moreover, he contends that the Marshals and NYPD acted unreasonably in executing that warrant by waiting eleven days to arrest him, *id.* at 22, and entering the Skyfield family residence before 6:00 A.M., *id.* at 26.

Under the *Franks* doctrine, "a defendant may contest a warrant by challenging the veracity of the supporting affidavit."[4]  *United States v. Powell*, 634 F. Supp. 3d 48, 52 (E.D.N.Y. 2022) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).  "To be entitled to a *Franks* hearing, a defendant must make 'a substantial preliminary showing' of (1) falsity, 'that a false statement . . . was included by the affiant in the warrant affidavit,' (2) knowledge, that the affiant made the allegedly false statement 'knowingly and intentionally, or with reckless disregard for the truth,' and (3) materiality, that 'the allegedly false statement is necessary to the finding of probable cause.'"  *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (quoting *Franks*, 438 U.S. at 155–56).  The defendant's burden in making the substantial preliminary showing is "a heavy one that requires more than a mere conclusory showing."  *Id.* at 86.  A defendant who meets that burden is entitled to a hearing at which she "must establish falsity, knowledge, and materiality" by a preponderance of the evidence.  *Id.* at 85.  If she prevails at the *Franks* hearing, "the search

---

[4] "It remains an open question in this circuit whether the *Franks* doctrine applies to arrest warrants at all."  *Powell*, 634 F. Supp. 3d at 53.  For purposes of Skyfield's motion to suppress, the Court "assume[s] without deciding that *Franks* applies to . . . arrest warrants; even if it applies, it does [Skyfield] no good."  *United States v. Awadallah*, 349 F.3d 42, 65 n.17 (2d Cir. 2003).

warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

Skyfield is not entitled to a *Franks* hearing "because he has not identified any statements or omissions in [Pompei's affidavit] that were false or misleading." *United States v. Montague*, 2017 WL 3483665, at *4 (W.D.N.Y. Aug. 15, 2017).  Although Skyfield suggests that Pompei "misle[d] Judge Abrams into issuing an arrest warrant" by falsely swearing that the NYPD had identified Skyfield as the shooter, Dkt. No. 37 at 5, police records belie Skyfield's assertion.  The day before Pompei applied for an arrest warrant, the NYPD had issued a "probable cause" investigation card for Skyfield in connection with the July 22, 2023 shooting.  Dkt. No. 38-1 at ECF p. 73.  NYPD documents also reveal the basis for that designation.  On July 25, 2023, the police reviewed LPR records showing a "suspect vehicle" that was in the vicinity of the shooting had another LPR hit a few hours later near the intersection of Atlantic Avenue and Woodhaven Boulevard in Queens.  *Id.* at ECF p. 51.  Footage from that intersection showed:  "Exiting from the vehicle[']s passenger side is an individual believed to be the perpetrator in this incident.  This individual is the same build, has the same hair style and wearing the same clothing as when the robbery and non[-]fatal shooting occurred."  *Id.*  The police subsequently obtained a scan of the identification that the man who exited the vehicle presented when he entered the Club.  *Id.* at ECF p. 60.  On August 3, 2023, the NYPD inspected "a still image of the perpetrator that was obtained from video that was collected inside" the Club that similarly depicted a man wearing the same clothing as the shooter.  *Id.* at ECF p. 70.  That same day, a detective who had met Skyfield in connection with an unrelated incident during which Skyfield was shot examined the still image from inside the Club and confirmed that the man who entered the club was Skyfield.  *Id.* at ECF pp. 71–72; Dkt. No. 37-1.  On August 4, 2023, after the NYPD had issued the

"probable cause" investigation card for Skyfield, *id.* at ECF p. 73, a detective conferred with Pompei, *id.* at ECF pp. 77–78 ("We discussed the details of the case and the involvement of Tyriek Skyfield.  I did provide details and documents required for him to obtain a federal Arrest warrant.").

Skyfield contends that these records demonstrate that the NYPD had merely identified him as the man who entered the Club, not the shooter.  Dkt. No. 37 at 4.  But his argument elides the fact that the NYPD had previously determined that the man who entered the Club was "the perpetrator (shooter) in this case."  Dkt. No. 38-1 at ECF p. 53.  Put differently, while the detective's confirmation that the man who entered the Club was Skyfield was the *final* step in the NYPD's identification process, it was not the *sole* step in that process.  Accordingly, Pompei's statement that the NYPD had identified Skyfield as the shooter was true.

In a related objection to the VOSR arrest warrant, Skyfield avers that Pompei's affidavit failed to establish the probable cause necessary for the Court to issue an arrest warrant.  Dkt. No. 30 at 19–21; Dkt. No. 37 at 6.  Specifically, he argues that "Officer Pompei simply parroted the NYPD's conclusory claim" that the NYPD had "*identified* Mr. Skyfield as the assailant."  Dkt. No. 30 at 20.  The Government retorts that the Pompei's affidavit "was more than sufficient, particularly in the supervised release context" and that, even if the affidavit were deficient, the good-faith exception would apply to Skyfield's arrest.  Dkt. No. 36 at 19–20.  Because the Court agrees that the good-faith exception applies, the Court need not decide whether Pompei's affidavit provided probable cause for the arrest warrant.  *See United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019).  "The good-faith exception applies here because, even assuming the [arrest warrant was] invalid, the Government acted in objectively reasonable reliance on [it], and none of the four . . . exceptions to this exception apply here."  *United States v. Nejad*, 436 F. Supp. 3d

707, 732 (S.D.N.Y. 2020) (Nathan, J.).  A "reasonably well-trained officer" would not have

"known" that Skyfield's arrest was "illegal despite the judge's authorization."  *United States v.*

*Triumph Cap. Grp., Inc.*, 211 F.R.D. 31, 60 (D. Conn. 2002).  As explained above, Judge

Abrams was not "knowingly misled" by the Pompei affidavit when she issued the warrant.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992).  Nor is there any plausible argument

that she "wholly abandoned . . . her judicial role."  *Id.*  Because the arrest warrant specified that

Skyfield "was the person to be arrested," it was "not facially deficient."  *United States v. Burgos*,

2021 WL 3788962, at \*9 (S.D.N.Y. Aug. 25, 2021), *aff'd sub nom. United States v. Howard*,

2023 WL 2980320 (2d Cir. Apr. 18, 2023).  Finally, the warrant was not so lacking in indicia of

probable cause as to preclude reasonable reliance.  Pompei's affidavit explained that the NYPD

had identified Skyfield as the shooter.  Courts have upheld probation officers' reliance on

"information from law enforcement officials working on an ongoing investigation" in Fourth

Amendment challenges.  *United States v. Townsend*, 371 F. App'x 122, 125 (2d Cir. 2010)

(summary order); *United States v. Lesane*, 2023 WL 155538, at \*6 (S.D.N.Y. Jan. 13, 2023)

(emphasizing "the significance of the information Probation received from the NYPD"); *see also*

*Roberts ex rel. Est. of Roberts v. Lapp*, 297 F. App'x 67, 69 (2d Cir. 2008) (summary order)

(affirming that a parole officer who sought a warrant "reasonably relied on the information he

received from [a police officer] suggesting that Roberts had violated the terms of his parole").

Accordingly, "the warrant affidavit was not completely bare bones."  *United States v. Clark*, 638

F.3d 89, 105 (2d Cir. 2011).  And in light of the diminished liberty and privacy interests of

individuals on probation, the Second Circuit has recognized that "the probable cause necessary to

make a warrant valid in [probation] cases could be established merely by a presentation of

'satisfactory evidence' that a person had violated the conditions of his release, a standard looser

than that required to satisfy the probable cause requirements for a criminal warrant." *United States v. Basso*, 632 F.2d 1007, 1013 (2d Cir. 1980) (citation omitted); *see also United States v. Bunn*, 542 F. App'x 50, 51 (2d Cir. 2013). *Basso*'s suggestion that probable cause is a less demanding standard in the probation context has sown some confusion over when that "lesser standard of probable cause applies,"[5] *DiGioia v. Berry*, 2007 WL 703211, at *3 (N.D.N.Y. Feb. 28, 2007), but that uncertainty reinforces the view that the warrant was not so lacking in the requisite probable cause as to preclude reasonable reliance, *see Clark*, 638 F.3d at 105 ("[W]e cannot fault police officers for failing to make these same connections in advance of the courts. Indeed, where the need for specificity in a warrant or warrant affidavit on a particular point was not yet settled or was otherwise ambiguous, we have declined to find that a well-trained officer could not reasonably rely on a warrant issued in the absence of such specificity."). Thus, the good-faith exception applies to the execution of the VOSR arrest warrant, so the Court will not suppress evidence obtained as a result of Skyfield's arrest based on the purported lack of probable cause.

Skyfield also argues that his arrest was invalid because the Government failed to heed the warrant's command to take Skyfield into custody and present him before a magistrate judge "without unnecessary delay." Dkt. No. 30-1 at ECF p. 6; Dkt. No. 37 at 7; *see* Dkt. No. 30 at 22. In response, the Government contends that any delay in apprehending Skyfield or bringing him before a magistrate judge "was brief and entirely reasonable." Dkt. No. 36 at 21.

The eleven-day delay between the issuance and execution of the VOSR arrest warrant does not justify suppressing evidence obtained during Skyfield's arrest. "[G]enerally it is

---

[5] For example, it is unclear whether *Basso*'s lesser standard governs the statutory "probable cause" requirement for the arrest of probationers that Congress enacted four years after the Second Circuit's decision. *See* 18 U.S.C. § 3606.

permissible for there to be a reasonable delay between the issuance of an arrest warrant and the execution of that warrant." *Auricchio v. Town of DeWitt*, 2013 WL 868261, at *15 (N.D.N.Y. Mar. 7, 2013), *aff'd*, 552 F. App'x 95 (2d Cir. 2014); *see United States v. Lambus*, 897 F.3d 368, 408 (2d Cir. 2018) ("Law enforcement investigators, for example, are under no constitutional duty to arrest a defendant the moment they receive confirmation of his criminal wrongdoing." (cleaned up)).  By unreasonably delaying the execution of an arrest warrant, the police "risk a court decision that the warrant had grown stale by the time it was used." *United States v. Watson*, 423 U.S. 411, 431–32 (1976) (Powell, J., concurring).[6]  Yet an eleven-day delay is not so lengthy as to be facially unreasonable.  *See Carey v. City of Mt. Vernon*, 2010 WL 3912400, at *5 (S.D.N.Y. Sept. 13, 2010) ("Carey cites no legal authority for the proposition that the passage of approximately one month, without more, . . . renders Carey's arrest unconstitutional.").  And there is "no evidence indicating that [law enforcement] delayed solely 'to gain tactical advantage'" over Skyfield.  *Gleis v. Buehler*, 374 F. App'x 218, 220 (2d Cir. 2010) (summary order) (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)); *cf. Waston*, 423 U.S. at 452 (Marshall, J., dissenting) ("Pre-arrest delay may violate a defendant's due process rights and cause dismissal of the charges if the delay . . . is deliberate and unjustified.").  Skyfield avers that the Marshals and NYPD waited to arrest him in order to secure additional evidence against him.  *See* Dkt. No. 30 at 23.  But his argument rests entirely on surmise.  In any event, delaying the execution of an arrest warrant for a short period of time to obtain more evidence is legally permissible and often appropriate.  *See United States v. DeJesus*, 538 F. Supp. 3d 382, 393 (S.D.N.Y. 2021) ("It is not always wise for the case, or the best use of the agency's

---

[6] *But cf. Watson*, 423 U.S. at 432 n.5 (Powell, J., concurring) ("The probable cause to support issuance of an arrest warrant normally would not grow stale as easily as that which supports a warrant to search a particular place for particular objects.").

resources, to act immediately on evidence of criminal behavior."). The rationale for such delays

"is simple: 'evidence sufficient to sustain issuance of an arrest warrant, i.e., probable cause, may

not be sufficient to sustain a conviction.'" *United States v. Boskic*, 2006 WL 1540488, at *9 (D.

Mass. June 2, 2006) (quoting *United States v. Toro*, 840 F.2d 1221, 1233–34 (5th Cir. 1988)),

*aff'd*, 545 F.3d 69 (1st Cir. 2008). Accordingly, the Government did not unreasonably delay the

execution of the VOSR arrest warrant.

      Nor did the Marshals unreasonably delay presenting Skyfield to a magistrate judge after

his arrest. The Marshals ceded custody over Skyfield to the NYPD overnight so the police could

interview him as part of their own investigation into the July 22, 2023 shooting. But the NYPD

brought Skyfield to federal court and presented him before the Honorable Katherine H. Parker

the following day. "The fact that federal and local investigating agencies on occasion work

together to solve crimes of dual jurisdiction is an aspect of law enforcement to be encouraged."

*United States v. Jetter*, 1994 WL 17530, at *7 (D. Conn. Jan. 10, 1994) (Cabranes, J.). However,

federal officers and state or local police cannot use collaboration as a ruse to subvert federal

rights. Specifically, "federal officials may not collude with state officers to circumvent federal

presentment requirements."[7] *United States v. Bin Laden*, 132 F. Supp. 2d 198, 208 (S.D.N.Y.

2001), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 177 (2d

Cir. 2008). To ensure collaboration between federal and state or local law enforcement remains

a genuine investigative technique and does not devolve into jurisdictional pretense, federal courts

remedy collusive state or local detention by suppressing post-arrest statements "obtained during

such a period of detention." *United States v. Alvarez-Sanchez*, 511 U.S. 350, 359 (1994).

---

[7] The Court assumes *arguendo* that this doctrine, developed to effectuate the presentment requirement of Federal Rule of Criminal Procedure 5, applies to the similar presentment requirement of Federal Rule of Criminal Procedure 32.1.

However, the defendant bears the burden of "showing . . . affirmative efforts to collaborate in order to circumvent the federal presentment rules." *Jetter*, 1994 WL 17530, at *7; *see United States v. Abu Ghayth*, 945 F. Supp. 2d 511, 519 (S.D.N.Y. 2013). Here, Skyfield's conclusory assertion that the Marshals and NYPD colluded to "question Mr. Skyfield before counsel was appointed" is insufficient to show that the overnight delay in his presentment was improper. Dkt. No. 30 at 23. The NYPD's records reveal that their investigation into the July 22, 2023 shooting led the police to believe that Skyfield had committed a robbery under New York law that night. Dkt. No. 38-1 at ECF p. 78. Given the overlapping jurisdiction of the federal government and local police over violent gun crimes, the NYPD's collaboration with the Probation Office and Marshals to investigate the shooting and apprehend Skyfield was not wrongful. *See Jetter*, 1994 WL 17530, at *7. Skyfield's collusion theory—that the Government delayed presentment to enable the NYPD to question him prior to the appointment of counsel— also stands in tension with the undisputed fact that he "heard and waived his *Miranda* rights," including the right to counsel, at the 47th Precinct. Dkt. No. 30 at 11. Ultimately, Skyfield's "[m]ere suspicion of a collusive arrangement is insufficient," *Bin Laden*, 132 F. Supp. 2d at 209, so the Court will not suppress his post-arrest statements based on the delay between his arrest and presentment.

In a final objection to his arrest, Skyfield argues that the Marshals and NYPD violated both Federal Rule of Criminal Procedure 41 and the Fourth Amendment by executing the arrest warrant at 5:50 A.M. Dkt. No. 30 at 29. Rule 41 provides that a "warrant to search for and seize a person or property" must command law enforcement officers to "execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." Fed. R. Crim. P. 41(e)(2)(A)(ii). Daytime is defined as "the hours between 6:00 a.m. and 10:00

p.m. according to local time." Fed. R. Crim. P. 41(a)(2)(B).  Skyfield contends that Rule 41's

daytime execution requirement applied to his arrest warrant, Dkt. No. 30 at 29, but that Rule

explicitly governs search and seizure warrants.  By contrast, Federal Rule of Criminal Procedure

4, which applies to "arrest warrant[s]," does not restrict the time of day during which officers

may effect an arrest.  Fed. R. Crim. P. 4.  Accordingly, Rule 41's daytime execution requirement

did not apply to Skyfield's arrest warrant.[8]  *See United States v. Willson*, 2017 WL 1133419, at

*6 (W.D.N.Y. Feb. 27, 2017) ("Rule 41 applies to search and seizure warrants, not arrest

warrants.  Thus, the execution of an arrest warrant is not subject to the Rule's 'daytime' or 'after

6:00 a.m.' requirement."), *report and recommendation adopted*, 2017 WL 1136988 (W.D.N.Y.

Mar. 24, 2017); *United States v. Giwa*, 617 F. Supp. 2d 1086, 1096 n.4 (D. Nev. 2007).

Skyfield's argument that the 5:50 A.M. execution of the arrest warrant violated his

Fourth Amendment rights is equally unavailing.  "In the absence of consent or exigent

circumstances . . . the Court has consistently held that the entry into a home to conduct a search

or make an arrest is unreasonable under the Fourth Amendment *unless done pursuant to a

warrant*." *Zuniga-Perez v. Sessions*, 897 F.3d 114, 122 (2d Cir. 2018) (cleaned up) (emphasis

added).  Conversely, "for Fourth Amendment purposes, an arrest warrant founded on probable

cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives

when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 602

---

[8] Even if Rule 41 did apply to Skyfield's arrest, "violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir. 1975).  Skyfield has not shown that he was prejudiced by the ten-minute interval between the execution of his arrest warrant and the onset of daytime under Rule 41, nor that the Marshals and NYPD intentionally and deliberately disregarded that Rule.  *See Willson*, 2017 WL 1133419, at *7; *United States v. Cardona*, 2015 WL 769577, at *8 (S.D.N.Y. Feb. 24, 2015); *United States v. Olsen*, 2006 WL 270249, at *4 (E.D.N.Y. Jan. 25, 2006).

(1980); *see also United States v. Terry*, 702 F.2d 299, 319 (2d Cir. 1983) ("Armed with a valid arrest warrant, the agents had the right to enter the Terry apartment if they had a reasonable basis for believing Terry was there.").  Here, the Probation Office secured a warrant for Skyfield's arrest that provided the Marshals and NYPD with the limited authority to enter the Skyfield family apartment to execute that warrant.  Based on the historical and real-time CSLI the Government had obtained for Skyfield's iPhone, it had ample evidence to conclude he was present in the apartment that morning.  While the Marshals and NYPD executed the arrest warrant prior to 6:00 A.M., "nighttime arrests are permitted when made pursuant to a warrant." *Willhauck v. Halpin*, 599 F. Supp. 282, 283 (D. Mass. 1984), *aff'd*, 953 F.2d 689 (1st Cir. 1991). Furthermore, Skyfield's arrest at 5:50 A.M. was a far cry from one "in the middle of the night." *Cipes v. Graham*, 386 F. Supp. 2d 34, 41 (D. Conn. 2005).  Courts have permitted the police to execute warrants within an hour of daytime.  *See Cogswell v. Cnty. of Suffolk Deputy Sheriff's Dep't*, 375 F. Supp. 2d 182, 187–88 (E.D.N.Y. 2005) (holding the police lawfully executed an arrest warrant at the defendant's home at 10:30 P.M.); *United States v. Deas*, 2008 WL 5063901, at *4 (D. Conn. Nov. 24, 2008) (upholding the execution of a search warrant at a residence at 10:55 P.M.).  And they have done so with good reason:  "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." *In re Application for Search Warrant*, 527 F. Supp. 3d 179, 188 (D. Conn. 2020) (Merriam, J.).  Given the outstanding warrant for Skyfield's arrest, the evidence indicating Skyfield was in the apartment, and the fact that the Marshals and NYPD executed the warrant just ten minutes before daytime, the Court rejects Skyfield's argument that the arrest violated his Fourth Amendment rights.

In sum, neither the issuance nor the execution of the VOSR arrest warrant justifies the suppression of evidence.

### C.      The CSLI Search Warrant

Skyfield challenges the search warrant for CSLI associated with his iPhone.[9]  Dkt. No. 30

at 23.  He argues that Magistrate Judge Gorenstein issued the warrant without probable cause,

*id.*, and that the warrant was non-particular and overbroad because it permitted the Government

to obtain "*historical* CSLI location data" from as early as July 1, 2023, *id.* at 25; *see* Dkt. No. 30-

2 at ECF p. 16.  The Government responds that the warrant application provided probable cause

for CSLI to assist law enforcement in apprehending Skyfield.  Dkt. No. 36 at 30.  Additionally,

the Government argues that the inclusion of historical CSLI in the warrant was proper.  *Id.* at 26.

In *Carpenter v. United States*, the Supreme Court held that "an individual maintains a

legitimate expectation of privacy in the record of his physical movements as captured through

CSLI."  138 S. Ct. 2206, 2217 (2018).  As a result, "the Government must generally obtain a

warrant supported by probable cause before acquiring such records."  *Id.* at 2221.  "[P]robable

cause must be examined in terms of cause to believe that the evidence sought will aid in a

particular apprehension or conviction."  *In re Smartphone Geolocation Data Application*, 977 F.

Supp. 2d 129, 134 (E.D.N.Y. 2013) (quoting *Warden v. Hayden*, 387 U.S. 294, 306–307 (1967));

*see also Dalia v. United States*, 441 U.S. 238, 255 (1979).

To establish probable cause for the CSLI warrant, the Government submitted the affidavit

of Deputy U.S. Marshal Kemmlein.  Dkt. No. 30-2 at ECF p. 8.  He attested that:  (1) Skyfield

was on supervised release as part of his sentence for a prior Hobbs Act robbery conviction; (2)

Judge Abrams had issued an outstanding warrant for Skyfield's arrest for VOSR; (3) Skyfield

had provided the iPhone's number to his probation officer on July 1, 2023; and (4) Skyfield had

---

[9] Skyfield exclusively challenges the CSLI portions of the warrant and does not contest the
warrant's authorization for the Government to examine pen register information.  *See* Dkt. No.
30 at ECF pp. 23–25.

personally contacted his probation officer using that number as recently as a few hours earlier. *Id.* at ECF p. 11. He also observed that the CSLI collected by cellphone service providers includes "relatively precise location information about a cellphone." *Id.* at ECF p. 10. Kemmlein therefore concluded that there was probable cause to believe that the requested CSLI would reveal the location of Skyfield, who was a "person to be arrested" for VOSR. *Id.* at ECF pp. 10–11.

Kemmlein's affidavit provided Magistrate Judge Gorenstein with "'a substantial basis' for making the requisite probable cause determination." *Clark*, 638 F.3d at 93 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Indeed, Kemmlein's logic was almost syllogistic: Skyfield was the subject of an outstanding arrest warrant. He had used the target phone for weeks, including as recently as the very morning of the warrant application. And the requested CSLI would provide relatively precise data on the cellphone's location. It follows that the CSLI associated with the target phone "would assist law enforcement in identifying Defendant's recent patterns of behavior and showing Defendant's common locations, which would assist in locating and arresting Defendant." *United States v. Nelson*, 2022 WL 18636591, at *12 (E.D.N.Y. Oct. 24, 2022), *report and recommendation adopted in relevant part*, 2023 WL 358421, at *1 (E.D.N.Y. Jan. 23, 2023) ("[T]he search warrant was supported by probable cause. The warrant application established the officers' reasonable belief that defendant—who was the subject of a pending arrest warrant—was using the target cell phone and that cell phone location data would aid them in apprehending him."); *see also United States v. Sosunov*, 2018 WL 2095176, at *12 (S.D.N.Y. May 7, 2018). There was ample reason to "believe that the evidence sought [would] aid in [Skyfield's] apprehension," *In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d at 134 (quoting *Warden*, 387 U.S. at 306–307), for purposes of the "'flexible, common-sense

standard' of probable cause," *Florida v. Harris*, 568 U.S. 237, 240 (2013) (quoting *Gates*, 462 U.S. at 238).

The CSLI warrant was also sufficiently particular.  To comply with the Fourth Amendment's particularity requirement, a search warrant must: "(1) 'identify the specific offense for which the police have established probable cause'; (2) 'describe the place to be searched'; and (3) 'specify the items to be seized by their relation to designated crimes.'"  *United States v. Walker*, 2023 WL 3451419, at *3 (2d Cir. May 15, 2023) (summary order) (quoting *Purcell*, 967 F.3d at 178).  All three criteria were met here.  *See United States v. Disla Ramos*, 2022 WL 17830637, at *10 (S.D.N.Y. Dec. 21, 2022).  The warrant specified the offense for which the Marshals had established probable cause, *i.e.*, "suspected violations of the terms of supervised release."  Dkt. No. 30-2 at ECF p. 14.  It stated the "location" to be searched, *i.e.*, the cellphone records.  *Id.* at ECF pp. 15–16.  And it clarified the relationship of those records to the designated crime, *i.e.*, the historical and prospective CSLI that would help the Marshals locate Skyfield for his arrest.  *Id.* at ECF p. 14.  Thus, based on the text of the warrant, "the executing officer [could] ascertain and identify with reasonable certainty those items authorized to be searched and seized."  *United States v. Ray*, 541 F. Supp. 3d 355, 377 (S.D.N.Y. 2021).

Instead, Skyfield's objection to the warrant's inclusion of historical CSLI goes to the "related but distinct concept[]," of breadth.  *Purcell*, 967 F.3d at 179 (quotation omitted).  "The doctrine of overbreadth represents, in a sense, an intersection point for probable cause and particularity principles."  *United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017) (Nathan, J.).  "[I]f the description of items to be searched or seized is broader than the limits imposed by the probable cause justifying the warrant," the warrant is overbroad.  *United States v. Conley*, 342 F. Supp. 3d 247, 271 (D. Conn. 2018).  Having determined that the Marshals

established probable cause to examine the iPhone's CSLI to locate and apprehend Skyfield, the Court must decide whether the inclusion of forty days of "*historical* CSLI" exceeded that probable cause because the Marshals "sought only to effect a future arrest."  Dkt. No. 30 at 25; *see* Dkt. No. 30-2 at ECF pp. 15–16.  As a general matter, prospective CSLI is plainly invaluable for law enforcement to arrest a suspect who is at large.  *See Disla Ramos*, 2022 WL 17830637, at *10.  But Skyfield errs in suggesting the inverse is true: that historical CSLI is irrelevant for a future arrest.  On the contrary, evidence of a suspect's prior movements can enable the police "to identify [his] common locations, including where [the suspect] was residing; to learn his recent patterns of behavior to assist in predicting his whereabouts; and generally helping to locate and arrest him."  *Nelson*, 2022 WL 18636591, at *13 (quotations omitted).  The inclusion of historical CSLI in the warrant did not render it overbroad under the Fourth Amendment.

Suppression of the CSLI would be inappropriate even if the CSLI warrant were deficient, because the good-faith exception applies.  Kemmlein presented his findings to a neutral magistrate who exercised his judicial role and found probable cause for law enforcement to review the CSLI associated with the target phone.  *See Ray*, 541 F. Supp. 3d at 397.  And the warrant was neither so lacking in probable cause nor so facially deficient that the Marshals could not reasonably rely on it when obtaining the CSLI.  *See United States v. Del Villar*, 2021 WL 4312060, at *9 (S.D.N.Y. Sept. 22, 2021).  Under these circumstances, "the government is entitled to claim the benefit of the good faith exception to the exclusionary rule."  *Clark*, 638 F.3d at 105.

### D.   The August 29, 2023 iPhone Search Warrant

Skyfield similarly moves to suppress evidence obtained pursuant to the August 29, 2023 warrant that authorized the Government to search for ESI on the iPhone seized during Skyfield's

arrest.[10]  Dkt. No. 30 at 42.  He avers that the warrant was issued without probable cause because the accompanying affidavit rested entirely on an investigator's generalizations about felons who possess weapons, rather than evidence specific to Skyfield or the iPhone at issue.  *Id.* at 37.  Likewise, Skyfield contends that the warrant lacked particularity since it did not identify the items to be seized and their relation to the relevant crime.  *Id.*  And the warrant was overbroad, according to Skyfield, in permitting the Government to review ESI from different "functions" of the iPhone, *id.* at 36, and from as early as January 1, 2023, *id.* at 38.

The Government responds that Skyfield's challenge to the August 29, 2023 search warrant is "moot" because the Government "sought and obtained an expanded warrant to search the same iPhone" on November 30, 2023, and the Government "produced a responsive set of ESI" from the subsequent warrant to Skyfield.  Dkt. No. 36 at 41.  If the Court were to reach the merits of Skyfield's argument, the Government contends that the Court should uphold the August 29, 2023 warrant because it was supported by probable cause, *id.* at 43, and appropriate in both its particularity and breadth, *id.* at 46, 48.

As an initial matter, Skyfield's objection to the August 29, 2023 warrant is not moot. Although the Government's brief asserts that "the Government never seized anything pursuant to the August 29 Phone Warrant," *id.* at 41; *see also id.* at 43, the Government conceded at oral argument that it had in fact examined ESI from Skyfield's iPhone pursuant to that warrant, *see also* Dkt. No. 36-1 at ECF p. 12.  ESI from that initial search was then incorporated into the

---

[10] Skyfield also suggests in passing that the NYPD lacked the authority to seize the iPhone during the arrest because the Marshals were "the arresting authority."  Dkt. No. 30 at 30.  That formalistic argument merely reframes the "stalking horse" theory rejected above.  Because the iPhone was next to Skyfield in the bedroom at the time of his arrest, the NYPD was entitled to take the iPhone as a "seizure[] incident to arrest."  *United States v. Handler*, 2023 WL 2584217, at *3 (S.D.N.Y. Mar. 21, 2023) (collecting cases).

November 30, 2023 application for an expanded warrant.  *Id.*; Dkt. No. 36 at 42–43.  So if the

August 29, 2023 warrant was invalid, Skyfield has a colorable argument that the "evidence

seized pursuant to the resulting [November 30, 2023] search warrant must be suppressed as fruit

of the poisonous tree."  *United States v. Williams*, 365 F. Supp. 3d 343, 350 (S.D.N.Y. 2019).

The validity of the August 29, 2023 warrant therefore presents a live issue in this case that must

be addressed on the merits, notwithstanding the Government's disclosure of evidence obtained

pursuant to the November 30, 2023 warrant.

But the Government provided probable cause for the August 29, 2023 warrant.  In his

supporting affidavit, Connolly stated that he had spent fifteen years as an investigator for the

New York State Police, during which he had participated "in numerous investigations" into

violent and drug crimes that involved "the search and seizure of electronic media, including the

contents of cellphones, computers, and other electronic devices."  Dkt. No. 30-5 at ECF p. 3.  He

explained that on August 22, 2023 the Honorable Sarah Netburn had signed a Complaint

charging Skyfield with possession of ammunition after a felony conviction, and he attached of

copy of the Complaint to his affidavit.  *Id.* at ECF pp. 5, 14–20.  He described Skyfield's arrest

on August 15, 2023, including that "at the time of arrest, the Subject Device was located on the

Subject's bed in the bedroom where he was arrested, and the Subject identified the Subject

Device as is."  *Id.* at ECF p. 6.  Once transported to the NYPD's 47th Precinct, Connolly noted,

Skyfield unlocked the iPhone by entering its passcode and used the iPhone to make several calls.

*Id.*  Connolly stated that he subsequently obtained the iPhone from the NPYD and, upon turning

it on, "observed a picture on the home screen" that depicted an individual with "long braided

hair, consistent with that of the Subject, and is wearing a white graphic T-shirt that, based on

visible lettering, appears to be the same white graphic T-shirt previously worn by the Subject during the Shooting and at the Club." *Id.*

Drawing on his fifteen years of "training and experience," Connolly opined that individuals "involved in firearms offenses," particularly felons, often "use cellphones and other electronic devices" to communicate about those offenses before, during, and after the crimes. *Id.* They frequently "store records relating to their illegal activity" on their cellphones and "take photos and videos of firearms, or share such photographs or videos with others through instant messages." *Id.* at ECF pp. 6–7. And "former felons, who cannot lawfully purchase firearms, will often search the dark web for sellers of firearms or will turn to other unauthorized sellers of firearms, who can be found on and message[d] with on social media, such as Facebook, or otherwise by communicated with by text message." *Id.* at ECF p. 7.

Skyfield argues that Connolly's extrapolations from his experience investigating *other* crimes failed to supply probable cause for the August 29, 2023 warrant. *See* Dkt. No. 30 at 37–38. "[B]lanket generalizations about how 'people who commit crimes' act . . . are 'not sufficient' to support a probable cause finding." *United States v. Bertini*, 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023) (quoting *United States v. Garcia*, 2023 WL 4850553, at *7 (D. Conn. July 28, 2023)). Particularly in an era in which smartphones are widespread, *see Riley v. California*, 573 U.S. 373, 393 (2014), the notion that an agent could establish probable cause to search an entire phone based on the truism that criminals' phones often bear traces of their criminality is redolent of the "general warrants" reviled by the Founding generation, *Carpenter*, 138 S. Ct. at 2213. But when paired with evidence specific to a suspect and target device, an agent's opinion that such devices often include relevant evidence can contribute—however modestly—to a finding of probable cause. *See, e.g.*, *United States v. Arias-Casilla*, 2022 WL

2467781, at *4 (S.D.N.Y. July 6, 2022); *United States v. King*, 2022 WL 875383, at *4 (S.D.N.Y. Mar. 24, 2022); *United States v. Akparanta*, 2019 WL 5616875, at *4 (S.D.N.Y. Oct. 30, 2019); *United States v. Okparaeka*, 2018 WL 3323822, at *10 (S.D.N.Y. July 5, 2018).

Here, Connolly's affidavit provided specific evidence, not merely general observations about how individuals involved in firearm offenses use their cellphones.  He provided forceful evidence that the target iPhone belonged to Skyfield by relaying how Skyfield had said the phone was his, knew the phone's password, used the phone while in NYPD custody, and appeared in the photo on the phone's home screen.  Furthermore, the photograph on the iPhone's home screen—which showed Skyfield wearing the same graphic t-shirt he allegedly wore both during the shooting and at the Club—is not only evidence of Skyfield's participation in the charged crime, but also suggests that the iPhone would likely contain other images of Skyfield in that clothing.  The relevance of those images is beyond serious dispute, as they would corroborate the Government's theory that Skyfield was the shooter.  Likewise, the Complaint attached to Connolly's affidavit asserted that, immediately after the shooting, the Victim repeatedly referred to the shooter as "Ty."  Dkt. No. 30-5 at ECF p. 16.  Because that allegation evinces that the Victim knew Skyfield, Connolly's statement that he believed the iPhone would contain text messages and other communications relevant to the felon-in-possession charge was not an idle generalization.  Rather, given the Victim's remarks, it would be eminently reasonable to conclude that the Victim communicated with Skyfield prior to the shooting and that evidence of those communications would be present on the iPhone.  Considered as a whole, Connolly's affidavit established that "there [was] a fair probability that . . . evidence of a crime [would] be found" on the iPhone, *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting *Gates*, 462 U.S. at 238), so Magistrate Judge Netburn issued the warrant upon probable cause.

Skyfield also argues that the warrant violated the Fourth Amendment's particularity requirement by failing to "specify the items to be seized by their relation to the designated crimes." Dkt. No. 30 at 41.  "Where warrants authorize the seizure of evidence pursuant to illustrative categories, '[c]ourts routinely validate [them] in the face of particularity challenges, reasoning that an illustrative list, coupled with a reference to the crimes for which evidence is sought, supplies sufficiently limiting guidance.'" *Akparanta*, 2019 WL 5616875, at *6 (quoting *United States v. Mendlowitz*, 2019 WL 1017533, at *10 (S.D.N.Y. Mar. 2, 2019)); *see also United States v. Kidd*, 386 F. Supp. 3d 364, 374–75 (S.D.N.Y. 2019) ("Courts in this circuit routinely uphold similar warrants against similar particularity challenges when the challenged warrants permit the collection of evidence illustrated by a list related to a set of federal offenses."), *aff'd*, 2023 WL 7290904 (2d Cir. Nov. 6, 2023).  The warrant at issue identified possession of ammunition after a felony conviction as the offense for which there was probable cause, Dkt. No. 30-5 at ECF p. 23, described the specific iPhone to be searched, *id.*, authorized the seizure of evidence relevant to the possession of ammunition count, and "list[ed] [illustrative] categories of items to be seized by their relation to designated crime[]." *United States v. Bellosi*, 2023 WL 2709879, at *8 (E.D.N.Y. Mar. 30, 2023) (citing *United States v. Lustyik*, 57 F. Supp. 3d 213, 227 (S.D.N.Y. 2014)).  For example, the warrant permitted the Government to search for text messages, chats, emails, and social media communications "about procuring, selling, or possessing firearms or the sending or receiving of threats that reference or depict firearms." Dkt. No. 30-5 at ECF p. 23.  The warrant similarly allowed the Government to examine "internet searches for firearms" and "images or videos of firearms." *Id.* at ECF p. 24.  As each illustrative category tethered the ESI to the "Subject Offense" of possession of ammunition after a felony conviction, the warrant sufficiently described the items to be searched by their relation to that

offense.  *See Walker*, 2023 WL 3451419, at *4 ("The Devices Warrant described ten specific

categories of evidence which provided guidelines limiting 'the kind of evidence sought' and

therefore did not delegate decisions regarding the scope of the seizure 'entirely to the discretion

of the officials conducting the search.'" (quoting *Purcell*, 967 F.3d at 180)).  Ultimately,

Skyfield's particularity concern appears to be that the warrant enabled the Marshals to "seize and

review the entire phone."  Dkt. No. 30 at 41.  But once again, Skyfield's objection "confuses a

warrant's breadth with a lack of particularity."  *United States v. Ulbricht*, 858 F.3d 71, 102 (2d

Cir. 2017); *see also United States v. Shipp*, 392 F. Supp. 3d 300, 307 (E.D.N.Y. 2019) (noting

the "frequent conflation" of these requirements), *aff'd*, 2022 WL 16543193 (2d Cir. Oct. 31,

2022).  Because it used an illustrative list of seven different categories of ESI, the warrant here

was "unquestionably broad, but '[a] warrant may be broad, in that it authorizes the government

to search an identified location or object for a wide range of potentially relevant material,

without violating the particularity requirement.'"  *Purcell*, 967 F.3d at 180 (quoting *Ulbricht*,

858 F.3d at 102).

Skyfield's overbreadth challenge fares no better.  He contends that the warrant was

unconstitutionally overbroad twice over, because it permitted the Marshals to search for ESI that

arose from several of the iPhone's different functions and that spanned a period of approximately

eight months.  Dkt. No. 30 at 36, 38.  First, courts have consistently rejected the proposition that

ESI search warrants are overbroad unless the Government limits its examination to specific kinds

of files—or, as Skyfield puts it, specific "functions."  *See Ulbricht*, 858 F.3d at 102; *Disla*

*Ramos*, 2022 WL 17830637, at *22; *Akparanta*, 2019 WL 5616875, at *7; *United States v.*

*Dawkins*, 2019 WL 2464924, at *7 (S.D.N.Y. May 23, 2019).  As a practical matter, restricting

ESI searches to certain file formats is infeasible because "data categories [are] not perfectly

separable.  For example, certain messages [may] . . . include or attach various forms of

multimedia, such as images and videos." *United States v. Gatto*, 313 F. Supp. 3d 551, 561

(S.D.N.Y. 2018) (quotation omitted); *see also United States v. Graziano*, 558 F. Supp. 2d 304,

315 (E.D.N.Y. 2008) ("[I]n most instances, there is no way for law enforcement or the courts to

know in advance how a criminal may label or code his computer files and/or documents which

contain evidence of criminal activities.").  According to Skyfield, technology has improved since

*Gatto*, such that law enforcement can now parse various ESI formats without any confounding

overlap.  Dkt. No. 30 at 41.  But even if that were so, requiring the Government to search only

for certain file formats would still be objectionable on an independent ground: it would create a

glaring hole in investigative procedures that criminals could exploit with ease.  Just as "[f]iles

and documents can easily be given misleading or coded names," *Ulbricht*, 858 F.3d at 102; *see*

*also United States v. Weigand*, 482 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) ("[F]ew people keep

documents of their criminal transactions in a folder marked 'drug records.'" (quoting *Riley*, 906

F.2d at 845)), so too could criminals use certain file formats, like encrypted peer-to-peer chats, to

elude Government searches limited to more conventional ESI, like text messages and photos.

Second, while a warrant's lack of temporal limitations can raise overbreadth concerns,

*see Nejad*, 436 F. Supp. 3d at 730 ("[F]ailure to indicate a time frame could render a warrant

constitutionally overbroad." (quoting *United States v. Hernandez*, 2010 WL 26544, at *9

(S.D.N.Y. Jan. 6, 2010))), the August 29, 2023 warrant imposed sufficient restrictions on the

Government's review of historical ESI to ensure the warrant did not exceed the Government's

probable cause.  The warrant confined the ESI search to an eight-month "time period of January

1, 2023 to the present."  Dkt. No. 30-5 at ECF p. 23.  As Skyfield had pleaded guilty to a felony

in 2013, he could not have lawfully possessed firearms or ammunition at any point during that

period.  *See* 18 U.S.C. § 922(g)(1).  The warrant's timeframe was further restricted by the

warrant's requirement that the Government search for information with a nexus to Skyfield's

alleged possession of ammunition during the July 22, 2023 shooting.  *Id.* at ECF pp. 23–24; *see*

*Disla Ramos*, 2022 WL 17830637, at *20 ("These items thus 'were effectively time-limited' by

reference to the crimes at issue." (quoting *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287,

306 (S.D.N.Y. 2018))); *see also King*, 2022 WL 875383, at *4.  Consequently, evidence too

remote from July 22, 2023—even if it postdated January 1, 2023—would fall outside the scope

of the warrant.  The Court therefore concludes that the August 29, 2023 warrant was not

overbroad.

Were the warrant infirm, suppression would still be improper because the good-faith

exception applies to the Marshal's ESI searches pursuant to that warrant.  *See Jones*, 43 F.4th at

110.  There is no assertion, much less evidence, that Magistrate Judge Lehrburger was misled or

abandoned his judicial role in issuing the warrant.  *See Clark*, 638 F.3d at 100.  For the reasons

stated above, Connolly's affidavit established probable cause, so it certainly was not "so lacking

in indicia of probable cause as to render reliance upon it unreasonable."  *Id.*; *see United States v.*

*Falso*, 544 F.3d 110, 128 n.24 (2d Cir. 2008) (Sotomayor, J.) (observing that this exception is "a

very difficult threshold to meet.").  And because the warrant specified "the place to be searched,

and the persons or things to be seized," it was not "facially deficient."  *Clark*, 638 F.3d at 100.

Accordingly, Skyfield's motion to suppress the fruits of the August 29, 2023 iPhone search

warrant is denied.

### E.      Request for a Suppression Hearing

Finally, Skyfield urges the Court to hold a suppression hearing in which he can question

the law enforcement officers who assembled the case against him and effected his arrest.  Dkt.

No. 30 at 43.  The Government retorts that a hearing is unnecessary because his arguments are predicated on conjecture and lack legal merit.  Dkt. No. 36 at 28.

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question."  *United States v. Almonte-Polanco*, 2023 WL 4246105, at *3 (2d Cir. June 29, 2023) (summary order) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d at 165).  In seeking a suppression hearing, the defendant "bears the burden of showing the existence of disputed issues of material fact."  *United States v. Martinez*, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014) (quoting *United States v. Washington*, 2012 WL 5438909, at *8 (S.D.N.Y. Nov. 7, 2012)).  "[T]o make the requisite showing in sufficient detail, the defendant must submit an affidavit by someone with personal knowledge that disputed facts exist."  *United States v. Noble*, 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008) (Sullivan, J.); *see also United States v. Barrios*, 210 F.3d 355 (2d Cir. 2000) (summary order); *United States v. Vasquez*, 2017 WL 1435861, at *2 (E.D.N.Y. Apr. 23, 2017).

Skyfield has not established a genuine dispute of fact that entitles him to a suppression hearing.  Aside from reciting the relevant legal standards and inviting the Court to hold a hearing "to the extent necessary," Skyfield does not articulate any reason to hold a hearing.  Dkt. No. 30 at 43.  Nor can the Court discern such a reason in his motion papers.  Although his briefing is replete with accusations that the Probation Office acted on the NYPD's behalf, those mere suspicions are not "sufficiently definite, specific, detailed, and nonconjectural" to warrant an examination of Probation Office, Marshals, and NYPD personnel.  *Almonte-Polanco*, 2023 WL 4246105, at *3; *see United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985) ("No

evidentiary hearing need be held where a defendant's allegations are general and conclusory or are based upon suspicion and conjecture.").  Furthermore, Skyfield includes those assertions to shore up his "stalking horse" theory that the Second Circuit has rejected as a matter of law. *Reyes*, 283 F.3d at 471.

After filing the motion to suppress, Skyfield submitted a belated affidavit in which he attested that he "had multiple contacts with [his] USPO Supervised Release Officer" between the issuance of his arrest warrant and the execution of that warrant.  Dkt. No. 31 ¶ 2.  He also stated that during his request he told the police that he "had been in contact with [his] probation officer the previous day by text and the proof was on [his] phone," *id.* ¶ 3, but that he "never consented to the seizure of [his] phone," *id.* ¶ 4.  While Skyfield unquestionably has "personal knowledge" of those facts, *Noble*, 2008 WL 140966, at *1, they are undisputed here and unnecessary to the resolution of his suppression motion, *see United States v. Harris*, 2021 WL 1512724, at *5 (S.D.N.Y. Apr. 16, 2021); *United States v. Minter*, 2021 WL 1109400, at *7 (S.D.N.Y. Mar. 23, 2021).

Because Skyfield has not shown a dispute of material fact, "a suppression hearing is not warranted."  *United States v. Ferrer*, 765 F. App'x 622, 625 (2d Cir. 2019) (summary order).

## CONCLUSION

Skyfield's motion to dismiss the Indictment and suppress evidence is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 28.


SO ORDERED.

Dated: December 22, 2023
       New York, New York            _____
                                            LEWIS J. LIMAN
                                     United States District Judge